IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DANNY DANIELS § | | |
| TDCJ-CID #01532037, § | | |
| v. § | | C.A. NO. C-09-299 |
| § | | |
| RICK THALER, ET AL. § | | |

## OPINION DISMISSING CERTAIN CLAIMS AND RETAINING CASE

This case was filed as a civil rights action by a state prisoner pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 10 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee, or proceeds as a pauper. Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's pro se complaint must be read indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible. Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Applying these standards, plaintiff's claims against defendants Rick Thaler, Warden Gutierrez, and Warden Jackson are dismissed for failure to state a claim; however, his failure to protect claims against the remaining defendants are retained, and service ordered on these individuals.

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. After consent by the plaintiff, (D.E. 11), this case was referred to a United States magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 13); see also 28 U.S.C. § 636(c).

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and is currently incarcerated at the Montford Unit in Lubbock, Texas, although his complaint concerns events that occurred while he was housed at the McConnell Unit in Beeville, Texas. He filed this action on November 4, 2009, claiming that defendants "authorized" gang members to brutally attack him on October 3, 2009, in deliberate indifference to his health and safety. (D.E. 1). He is suing the following individuals: (1) TDCJ-CID Executive Director Rick Thaler;[1] (2) Warden Ernest Gutierrez; (3) Assistant Warden Norris Jackson; (4) Major Matt Barber; (5) Major Aurelio Ambriz; (6) Sergeant Darren Mayer; (7) Sergeant Joseph Butler; (8) Sergeant Perez; (9) Officer John Doe; and (10) Officer Jane Doe.

A Spears[2] hearing was conducted on November 12, 2009. The following allegations were made in plaintiff's original complaint, or at the hearing:

In January 2009, plaintiff was transferred from the Connally Unit to the McConnell Unit on a life in danger claim concerning the Crips, a Security Threat Group. At the Connally Unit,

---

[1] In his original complaint, plaintiff named former TDCJ-CID Director Nathaniel Quarterman as a defendant. Mr. Quarterman retired on July 15, 2009, and therefore the new director, Rick Thaler, has been substituted in his place based on plaintiff's oral motion.

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

plaintiff had been labeled a "snitch," and he was threatened by Crips members. When he arrived at the McConnell Unit, Major Ambriz met with plaintiff and acknowledged his conflict with the Crips.

On an unknown date after January 2009, an unidentified offender was transferred from the Connally Unit to the McConnell Unit. This offender told the Crips that plaintiff had been transferred off the Connally Unit as a result of conflicts with the Crips there. The Crips leader at the McConnell Unit stated that he wanted to "check out" plaintiff.

On October 3, 2009, plaintiff heard about a fight involving Crips members. He then complained to Sergeant Perez, who was working the floor in D space, that she was not doing her job properly. He then went to the dining hall, and on his way back, he went into the dayroom to play dominoes. As he entered the dayroom, he was confronted by seven Crips members who had been told that plaintiff reported to Sergeant Perez that they had been fighting over drugs or weapons. They then jumped plaintiff and began beating him. Officer Jane Doe, who was working in the picket, saw plaintiff being attacked, but she did not open the picket door to allow him to escape. In fact, she opened the doors to another pod, and more inmates came in and attacked plaintiff in D space. One inmate had a shank and cut him above the eye. Plaintiff rolled up into a ball to avoid being injured as much as he could. Finally, believing plaintiff was dead, the inmates who had attacked him fled.

Sergeant Perez came and escorted plaintiff to the infirmary. He received six stitches for the cut to his eye, and remained in medical for three days. He continues to have blurry vision in his right eye, headaches, and mental anguish from the beating.

After his stay in the infirmary, plaintiff was transferred from J5 to 11-Building. Once there, he met with Sergeant Butler, a Gang Intelligence officer. Sergeant Butler asked him why the assault occurred, and he told him that he did not know, but that the gang members believed he had told Sergeant Perez they were fighting. Sergeant Butler asked if the gang members had been fighting about drugs or weapons, and plaintiff stated he did not know. Soon thereafter, plaintiff intercepted a "kite" from a gang member accusing him of telling Gang Intelligence that gang members had been fighting. He responded that he only told Gang Intelligence that he did not know why they were fighting.

On October 12, 2009, plaintiff went before a Unit Classification Committee ("UCC") headed by Major Ambriz. Based on the UCC recommendation, at the time plaintiff filed suit, he was housed in transit awaiting a transfer from the McConnell Unit. He has since been transferred to the Montford Unit.

Plaintiff is seeking declaratory relief, compensatory and punitive damages, and an unspecified injunction against defendants. (D.E. 1, at 21).

### III. DISCUSSION

**A.  Legal Standard For A Civil Rights Action Pursuant To 42 U.S.C. § 1983.**

Plaintiff's action may be dismissed for failure to state a claim upon which relief can be granted despite his failure to exhaust administrative remedies. 42 U.S.C. § 1997e(c)(2). It is well established that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995)

(per curiam). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed. Id. (citation omitted).

**B.**    **Plaintiff's Claims Against Defendants In Their Official Capacity Fail To State A Claim.**

Plaintiff did not specify in what capacity he was suing defendants. "A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents." Kossie v. Crain, 602 F. Supp.2d 786, 790 (S.D. Tex. 2009) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). "The Eleventh Amendment bars a suit for money damages against a state or state agency." Id. (citing Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996)). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). Thus, to the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment, and they are dismissed.

The Eleventh Amendment does not bar plaintiff's claims against defendants in their official capacities for injunctive relief. Clay v. Texas Women's Univ., 728 F.2d 714, 715-16 (5th Cir. 1984). However, to the extent plaintiff has sued defendants in their official capacities for injunctive relief, those claims are now moot because plaintiff was transferred from the McConnell Unit. See Edwards v. Johnson, 209 F.3d 772, 776 (5th Cir. 2000) (request for injunctive and declaratory relief becomes moot when an inmate leaves the complained-of

facility). Thus, plaintiff's claims for injunctive relief against defendants in their official capacities are dismissed as moot.

**C.     Plaintiff's Failure To Protect Claims.**

Plaintiff is suing defendants on the grounds that they violated his Eighth Amendment right to be free from cruel and unusual punishment by allowing conditions to exist at the prison which made the assault more probable than not. He claims that defendants knew he was at risk of harm from Crips gang members based on his transfer from the Connally Unit, but that defendants housed him with Crips members and failed to provide adequate protection.

Prison officials have a duty to protect prisoners from violence, including violence at the hands of other inmates and officers. Cantu v. Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). A prison official is deliberately indifferent to an inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Id. (citing Farmer, 511 at 847). Deliberate indifference describes a state of mind "more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835.

**1.     Plaintiff's claims against Rick Thaler, Ernest Gutierrez, and Norris Jackson are dismissed.**

Plaintiff named TDCJ-CID Director Rick Thaler, Warden Gutierrez, and Assistant Warden Jackson as defendants arguing that, as director and senior head and assistant wardens, they are ultimately responsible for the actions of their subordinates.

It is well settled that a plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. Beattie v. Madison County

School Dist., 254 F.3d 595, 600 n.2 (5th Cir. 1983) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)); accord David v. Hill, 410 F. Supp.2d 749, 760 (S.D. Tex. 2005) (citation omitted). The Fifth Circuit has elaborated that pursuant to "section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001) (quoting Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987)); accord Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d at 382 (citing Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976)). A supervisor who is not personally involved is liable under the theory of "supervisory liability" only if he has implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Thompkins v. Belt, 828 F.2d at 304 (citations omitted). "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992) (citations omitted).

      The mere fact that Rick Thaler is the Director of the TDCJ-CID does not amount to personal involvement. Moreover, plaintiff does not contend that an unconstitutional policy played a role in the alleged constitutional violations; indeed, he claims that officers did not follow TDCJ-CID policy, thus admitting that the policies in place are designed to protect the inmates and are not unconstitutional. Similarly, the fact that Ernest Gutierrez is the senior warden and Norris Jackson is an assistant warden at the McConnell Unit does not render them responsible for the actions or omissions of their employees. Moreover, plaintiff admitted that he

never spoke directly to Warden Gutierrez or Warden Jackson concerning his housing, threats from Crips members, the staff to inmate ratio, or any other security issue. Thus, plaintiff fails to state a claim against these defendants, and therefore, these claims are dismissed with prejudice.

**2.     Plaintiff's claims against Major Barber and Major Ambriz are dismissed.**

Plaintiff contends that Major Barber and Major Ambriz failed to provide adequate security even though they knew he was at risk of harm from gang members, and that they failed to investigate the assault after it occurred.

At the Spears hearing, plaintiff admitted that he never talked to Major Barber directly about his safety, either before or after the assault. Thus, he fails to allege any personal involvement by this defendant.

As to Major Ambriz, plaintiff testified that he met with him upon his arrival at the McConnell Unit; however, he did not meet with him again. Thus, plaintiff never met with Major Ambriz after the Connally Unit offender arrived and told Crips members about why plaintiff left that unit, nor did he tell Major Ambriz that his safety was now at issue. Moreover, Major Ambriz presided over the October 12, 2009 UCC at which it was recommended that plaintiff be transferred.

Thus, plaintiff fails to establish that, prior to the assault, either of these defendants had actual knowledge that he was at risk of harm from gang members. Moreover, he admits that his claims were in fact investigated by Gang Intelligence and Security Threat Group officers. To the extent he claims that Major Barber and Major Ambriz failed to follow Security Threat Group and Gang Intelligence policies, this allegation in and of itself fails to state a constitutional violation. See Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam) (TDCJ-CID's

failure to follow its own administrative rules and regulations does not raise federal constitutional issues as long as minimal constitutional requirements are met). Thus, plaintiff fails to state a claim against these defendants, and therefore, these claims are dismissed with prejudice.

### 3. Plaintiff's claim against Sergeant Mayer is dismissed.

Plaintiff claims that Sergeant Mayer, a Security Threat Group investigator, continued to deny him proper protection *after* the assault because he simply recommended a transfer and did not order additional safeguards to ensure his future safety, and he never met personally with him after the assault. These allegations, however, fail to establish that Sergeant Mayer was aware of a serious risk to plaintiff's health and safety prior to the assault. Indeed, plaintiff admitted that he never spoke personally to Sergeant Mayer because anytime he approached him, he said he was "too busy." In addition, after the October 12, 2009 UCC hearing, another inmate told plaintiff that he heard Sergeant Mayer agree with the recommendation to transfer plaintiff off the McConnell Unit.

Plaintiff does not point to any injury suffered *after* the October 3, 2009 assault. Thus, plaintiff fails to state a claim against Sergeant Mayer, and therefore, this claim is dismissed with prejudice.

### 4. Plaintiff's claim against Sergeant Butler is dismissed.

Plaintiff claims that Sergeant Butler violated his constitutional rights by breaching a "confidentiality agreement." Plaintiff claims that he met with Sergeant Butler on October 4, 2009 and told him about his problems with the Crips and that he was in fear for his life. Sergeant Butler asked him if he had told Sergeant Perez about the Crips fighting over contraband, and he denied this statement. Plaintiff claims that Sergeant Butler then breached his

confidence by telling Crips gang members that plaintiff was afraid for his life and that he denied telling Sergeant Perez about any fight.

These allegations fail to state a claim of failure to protect as plaintiff offers no facts to suggest that Sergeant Butler was aware of a serious risk to plaintiff's health and safety prior to the assault. Again, plaintiff does not point to any injury suffered *after* the October 3, 2009 assault. Indeed, plaintiff's only encounters with Sergeant Butler occurred after the assault, and therefore, he fails to establish that Sergeant Butler ignored a known risk.

### 5.     Plaintiff's claims against Sergeant Perez, Officer John Doe, and Officer Jane Doe are retained.

Plaintiff claims that Sergeant Perez, Officer John Doe, and Officer Jane Doe all failed to protect him when, on October 3, 2009, they witnessed his attack but failed to intervene or assist him, thus allowing the assault to continue longer. He claims that Officer John Doe, who was working the floor, failed to push the panic button, and that Officer Jane Doe failed to open the picket and failed to call for additional help. He also maintains that three officers are insufficient to protect 140 inmates on three pods, and that the officers should have demanded additional help.

For purposes of § 1915A, plaintiff has stated Eighth Amendment claims against these defendants. Although correctional officers are not required to place themselves in danger to break-up a fight, plaintiff testified that these officers observed his distress yet failed to take even minimal efforts to stop the assault. Indeed, plaintiff claims that the picket officer actually opened a second pod door allowing additional inmates to join in the assault, including the inmate who attacked plaintiff with a shank. Accordingly, these claims will be retained and service ordered on these defendants.

### D. Plaintiff's State Law Negligence Claims Are Retained Only Against Retained Defendants.

Plaintiff also contends that all defendants were negligent in the manner in which they provide safety to inmates. To the extent plaintiff claims that Sergeant Perez, Officer Jane Doe and Officer John Doe were negligent in ensuring his safety, because the constitutional claims are retained, plaintiff's state law claims against these three defendants are retained. See 28 U.S.C. § 1367(a); Mendoza v. Murphy, 532 F.3d 342, 346 (5th Cir. 2008). However, as to the dismissed defendants, because the constitutional claims are dismissed, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims against those defendants. See 28 U.S.C. § 1367(c)(3); Priester v. Lowndes County, 354 F.3d 414, 425 (5th Cir. 2004).

### IV. CONCLUSION

For the foregoing reasons, plaintiff's § 1983 claims and state law negligence claims against Sergeant Perez, Officer Jane Doe, and Officer John Doe are retained. Plaintiff's § 1983 claims against the remaining defendants are dismissed with prejudice for failure to state a claim or frivolous. See 28 U.S.C. § § 1915(e)(2)(B)(ii) and 1915A(b)(1). Plaintiff's state law negligence claims against those defendants are dismissed without prejudice.

ORDERED this 30th day of December 2009.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE