IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DANNY DANIELS | § | |
|     TDCJ-CID # 01532037 | § | |
| v. | § | C.A. NO. C-09-299 |
| | § | |
| RICK THALER, ET AL | § | |

**OPINION GRANTING DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is Defendants' motion for judgment on the pleadings. (D.E. 26). For the reasons stated herein, Defendants' motion is hereby GRANTED.

**I. JURISDICTION**

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1367. After consent by the parties, (D.E. 11, 28), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 29); see also 28 U.S.C. § 636(c).

**II. PROCEDURAL HISTORY**

On November 4, 2009, Plaintiff filed this action raising civil rights claims against prison officials at the McConnell Unit in Beeville, Texas. (D.E. 1). A Spears[1] hearing was conducted on November 12, 2009. (D.E. 7). On December 30, 2009, an Order was entered to dismiss certain claims and retain the case. (D.E. 14). Plaintiff's claims for failure to protect and state common-law negligence claims against Officer Jane Doe, Officer John Doe, and Sergeant Jane Doe, id., who were later identified as Officer Raquel Perez, Officer Gilbert Bustamante, and

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (testimony given at a Spears hearing is incorporated into the pleadings).

Sergeant Irene Peralez respectively were retained. (D.E. 21). All other claims and defendants were dismissed. (D.E. 14). Defendants filed an answer on March 23, 2010, (D.E. 25), and a motion for judgment on the pleadings on the same day. (D.E. 26). Plaintiff did not file a response to Defendants' motion.[2]

### III.  BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice ("TDCJ"), Correctional Institutions Division, and is currently incarcerated at the Allred Unit in Iowa Park, Texas. (D.E. 30). However, his complaint concerns events that occurred while he was housed at the McConnell Unit. (D.E. 1). He filed this action on November 4, 2009, claiming that Defendants "authorized" gang members to brutally attack him on October 3, 2009, in deliberate indifference to his health and safety. Id. at 12-14. The following allegations were made in Plaintiff's original complaint, or at the Spears hearing:

In January 2009, Plaintiff was transferred from the Connally Unit to the McConnell Unit on a life in danger claim concerning the Crips, a Security Threat Group. At the Connally Unit, Plaintiff had been labeled a "snitch," and he was threatened by Crips members.

On an unknown date after January 2009, an unidentified inmate was transferred from the Connally Unit to the McConnell Unit. This inmate told the Crips that Plaintiff had been transferred off the Connally Unit as a result of conflicts with the Crips there. The Crips leader at the McConnell Unit stated that he wanted to "check out" Plaintiff.

On October 3, 2009, Plaintiff heard about a fight involving Crips members. Consequently, he then complained to Sergeant Peralez, who was working the floor in D space,

---

[2] Pursuant to Local Rule 7.4, "[f]ailure to respond will be taken as a representation of no opposition."

that she was not doing her job properly. He then went to the dining hall, and on his way back, he went into the dayroom to play dominoes. As he entered the dayroom, he was confronted by seven Crips members who had been told that Plaintiff reported to Sergeant Peralez that they had been fighting over drugs or weapons. They then jumped Plaintiff and began beating him. Officer Bustamante was stationed nearby, but did nothing to stop the attack. Officer Perez, who was working in the picket, saw Plaintiff being attacked, but she did not open the picket door to allow him to escape. In fact, she opened the doors to another pod, and more inmates came in and attacked Plaintiff in D space. One inmate had a shank and cut him above the eye. Plaintiff rolled up into a ball to avoid being injured as much as he could. Finally, believing Plaintiff was dead, the inmates who had attacked him fled.

Sergeant Peralez came and escorted Plaintiff to the infirmary. He received six stitches for the cut to his eye, and remained in the infirmary for three days. He continues to have blurry vision in his right eye, headaches, and mental anguish from the beating.

After his stay in the infirmary, Plaintiff was transferred from J5 to 11-Building. On October 12, 2009, Plaintiff went before a Unit Classification Committee headed by Major Ambriz. Based on their recommendation, at the time Plaintiff filed suit, he was housed in transit awaiting a transfer from the McConnell Unit. He was transferred to the Montford Unit, and has since been transferred again to the Allred Unit.

Plaintiff is seeking declaratory relief, compensatory and punitive damages, and an unspecified injunction against defendants. (D.E. 1, at 21).

## IV.  DISCUSSION

Plaintiff claims that but for Defendants' deliberate indifference, he would not have been attacked.  (D.E. 1).  In their motion, Defendants claim that Plaintiff's complaints are procedurally barred because he failed to exhaust his administrative remedies before filing suit.  (D.E. 26, at 3-5).

### A.   Standard Of Review For A Motion For Judgment On The Pleadings.

A litigant may move for judgment pursuant to Rule 12(c) "[a]fter the pleadings are closed but within such time as not to delay the trial."  Fed. R. Civ. P. 12(c).  The Fifth Circuit has established that "'[a] motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'"  Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002) (quoting Hebert Abstract Co. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)).

When analyzing a Rule 12(c) motion, "'[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain.'"  Id. (quoting Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001)).  A district "court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam).  Courts must evaluate the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true.  Id. (citation omitted).  A Rule 12(c) movant must clearly establish that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law.  Greenberg v. Gen. Mills Fun Group, Inc.,

478 F.2d 254, 256 (5th Cir. 1973) (per curiam) (citations omitted).

**B.      Plaintiff Failed To Exhaust His Administrative Remedies For His Federal Claims.**

Defendants assert Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e.  (D.E. 26, at 3-5).  In the Prison Litigation Reform Act ("PLRA"), Congress mandated that inmates must exhaust their administrative remedies prior to filing civil rights actions:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).  The Supreme Court has clarified that a prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  Woodford v. Ngo, 548 U.S. 81, 92-93 (2006).  An inmate's failure to exhaust is an affirmative defense that must be raised by defendants.  See Jones v. Bock, 549 U.S. 199, 216 (2007).

The TDCJ currently provides a two-step procedure for presenting administrative

grievances.[3]  A prisoner must pursue his grievance at both the Step 1 and Step 2 levels in order to exhaust his administrative remedies.  See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004) (citing Wright, 260 F.3d at 358).

The purpose of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court.  Woodford, 548 U.S. at 94.  As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding."  Booth, 532 U.S. at 737.

The Fifth Circuit has recognized that the exhaustion requirement may, in rare circumstances, be excused where dismissal would be inefficient or would not further the purposes of the Prison Litigation Reform Act.  Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998) (per curiam) (citing McCarthy v. Madigan, 503 U.S. 140, 146-49 (1992)) (overruled by implication on other grounds by Bock, 549 U.S. at 215-17).  For example, exhaustion may be excused where irregularities in the prison administrative system itself prohibited the plaintiff from doing so.  Id.; accord Shah v. Quinlin, 901 F.2d 1241, 1244 (5th Cir. 1990).  An administrative remedy is not available where prison officials ignore or interfere with the prisoner's pursuit of relief.  Underwood, 151 F.3d at 296; accord Holloway v. Gunnell, 685 F.2d 150, 154 (5th Cir. 1982).

---

[3] Step 1 requires the prisoner to submit an administrative grievance at the institutional level.  Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)).  After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator.  Id.  Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ.  Id.  After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for Step 2 of the process, which is the director, deputy director, regional director or assistant director.  Id.

Here, Plaintiff admits that he has not completed the TDCJ grievance process. (D.E. 1, at 3, 15-16). He does not claim that the administrative system was inefficient, prohibited him from exhausting his claims, or interfered with his "pursuit of relief." See Underwood, 151 F.3d at 296. Rather, he explains he filed a Step 1, but chose not to complete the process because he would be murdered by the time it ran its course and it cannot provide the relief he seeks. Id. He does not allege that he has received a specific threat, or that a certain person or situation will cause this murder, just that he will certainly be killed. Id.

Plaintiff's lean assertion, devoid of any specific facts, is not reason enough to believe Plaintiff could not await a final outcome from the prison administrative system, but in any event, it appears any danger has been averted given that he has twice been transferred since the filing of this complaint and he no longer resides in the McConnell Unit. Furthermore, the Fifth Circuit has clearly explained that even though a prison grievance process might not be capable of providing the specific redress sought by a prisoner, especially monetary damages, a prisoner wishing to file a § 1983 claim against prison officials must, nonetheless, complete that process before filing suit in district court. See Booth, 532 U.S. at 740-41.

Accordingly, Petitioner failed to exhaust his administrative remedies before he filed his federal claims, and they are, therefore, procedurally barred.

**C.      Plaintiff's State Pendent Jurisdiction Claims Are Not Covered By The PLRA.**

Pursuant to the PLRA, inmates are required to exhaust administrative remedies for all claims raised based on federal law. See 42 U.S.C. § 1997e(a). Based on the explicit language concerning federal claims, state claims over which a court exercises pendent jurisdiction do not have to be exhausted pursuant to the PLRA. See Becerra v. Symmes, No. 08-5358, 2010 WL

489513, at *2 (D. Minn. Feb. 4, 2010) (unpublished).

Moreover, the Fifth Circuit has explained that "[g]enerally, when all federal claims have been dismissed, a district court should dismiss any pendent state law claims without prejudice so that the Plaintiff may re-file his claims in the appropriate state court." James v. Gonzalez, 348 F. App'x 957, 959-60 (5th Cir. 2009) (per curiam) (unpublished) (citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989)).

Accordingly, the Court declines to exercise pendant jurisdiction over Plaintiff's remaining state negligence claims.

## V.  CONCLUSION

Based on the foregoing, Defendants' motion for judgment on the pleadings, (D.E. 26), is granted.  Plaintiff's claims for failure to protect as well as his state common-law negligence claims are dismissed without prejudice.

Ordered this 21st day of June 2010.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE